UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JASON POTTER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | C.A. No. 04-40052-FDS |
| v. | ) | |
| | ) | |
| DAVID L. WINN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
RESPONDENT'S MOTION TO DISMISS**

**I. INTRODUCTION**

**A. Petitioner**

Petitioner Jason Potter, Register Number 11019-040, is a federal inmate who has been incarcerated at the Federal Medical Center in Devens, Massachusetts (FMC Devens) since August 18, 2004. See Document 1a, Admission-Release Data for Inmate Jason Potter, Register Number 11019-040, attached to the Declaration of FMC Devens Paralegal Trainee Stephanie Scannell.[1] On January 3, 2003, Petitioner was sentenced in the United States District Court for the Western District of Michigan to a 36 month term of incarceration with a three-year term of supervised release to follow for Possession of a Short-Barreled Shotgun, in violation of 26 U.S.C. § 5861(d). See Exhibit 1, Document 1b, Judgment and Commitment Order. Assuming Petitioner is granted all remaining Good Conduct Time ("GCT") available to him under 18 U.S.C. § 3624(b), his projected statutory release date is October 1, 2005. See Exhibit 1,

---

[1] The Scannell Declaration is attached as Exhibit 1.

Document 1c, Sentence Monitoring Computation Data. If all GCT is disallowed, Petitioner's full term expiration date is February 6, 2006.

## B. The Petition

The Petitioner, who was sentenced in federal court on January 3, 2003, alleges that he should receive credit on his current federal sentence for time spent in official detention at the Kent County Jail in Michigan from November 8, 2002, through April 6, 2003. For the reasons stated below, the Petition should be denied, first, because the Petitioner failed to exhaust his administrative remedies, and, second, because there is no merit to the Petitioner's claim.

## II. FACTS

### A. Factual Background

On May 2, 2002, Petitioner was arrested in the State of Michigan for Carrying a Concealed Weapon in an Automobile, Possession of a Short-Barrel Shotgun, Improper License Plate and Restricted License Violation.[2] He was detained at the Kent County Jail from May 2, 2002 through July 3, 2002. See Exhibit 1, Document 1d, Memorandum for J&C File from A. Amico, Assistant ISM, dated February 3, 2004. For these charges, the State entered a nolle prosequi as to the weapons offense, see Petition at 1-2, and Petitioner was sentenced to five (5) days, time served, from May 2, 2002 through May 6, 2002 for the remaining state charges. Id., Document 1e and footnote 2 below.

On July 3, 2002, however, immediately upon release from the custody of Kent County, federal authorities arrested Petitioner and charged him with Possession of a Short-Barreled

---

[2] This information is also retrieved from Petitioner's Pre-sentence Investigative Report which is not attached for confidentiality reasons. If this Court wishes to review a copy, Respondent will provide this document.

Shotgun under 26 U.S.C. § 5861(d), for the same underlying conduct for which he was arrested by state authorities on May 2, 2002. Id., Document 1e, United States Marshals Service Individual Custody and Detention Report. He was released on bond the same day. Id.

While out on bond, Petitioner was again arrested by state authorities in Michigan on November 8, 2002, for a separate offense, namely Home Invasion - Second. See Petition, p.2. While in state custody, his federal bail was revoked and a federal detainer was filed on November 13, 2002. Id., Document 1e. Petitioner was subsequently borrowed from state custody on a federal writ of habeas corpus on December 31, 2002 for federal court proceedings on his federal weapons offense. See Document 1e. Shortly thereafter, on January 3, 2003, after a plea of guilty, Petitioner was sentenced in the United States District Court for the Western District of Michigan to a 36-month term of incarceration with a three year term of supervised release to follow for Possession of a Short-Barreled Shotgun, in violation of 26 U.S.C. § 5861(d). Id., Document 1b. Following federal sentencing, on that same date of January 3, 2003, Petitioner was returned to the custody of the State of Michigan which was detaining him for his second Home Invasion offense. Id., Document 1e, Individual Custody Report.

Later, on April 6, 2003, Petitioner was sentenced by the State of Michigan to time served for the Home Invasion offense. Id., Document 1f. Therefore, starting on November 8, 2002 (date of state arrest for Home Invasion) through April 6, 2003, Petitioner was serving a six-month sentence imposed by the State of Michigan for that offense.[3] Id.

Petitioner's federal sentence was automatically computed at FMC Devens. The date

---

[3] Nonetheless, Petitioner claims he is to receive credit on his current federal sentence for the time he served in state custody for the Home Invasion offense.

computation began on Petitioner's instant federal sentence was April 6, 2003, the date he was released from the service of his state sentence for Home Invasion and placed in federal custody to serve his federal sentence for weapons violations.  Id., Documents 1c and 1d[4].  Pursuant to 18 U.S.C. § 3585(b), Petitioner received jail credit of 58 days for the time period spent in state custody from May 7, 2002 through July 3, 2002, as that time was not credited to the service of any other sentence.  Id.  Petitioner did not receive any jail credit for the time periods from May 2, 2002 through May 6, 2002, nor November 8, 2002 through April 5, 2003, as he was actively serving a *state* sentence during these times.  Id.  See also Document 1d and Document 1f.  As stated previously, assuming Petitioner receives all GTC available to him under 18 U.S.C. §3624(b), his projected date of release is October 1, 2005.  See Document 1c.  If all GTC is disallowed, Petitioner's full term expiration date is February 6, 2006.  Id.

### B. Administrative Remedy History

As required by 28 C.F.R. § 542.13(a), on or about November 17, 2003, Petitioner attempted to resolve informally his credit computation complaint by submitting an Inmate Request to Staff Member form to the Inmate Systems Management Department.  Id., Document 1g.  In his request, Petitioner states that "the two months jail time from 5/2/02 - 7/2/02 has not been credited to any other sentence."[5]  Id  According to Petitioner, he was "due that time."  Id.  In addition, Petitioner believed "the period from January 3, 2003 - 4/6/2003 [he was] also due

---

[4] After Petitioner was taken into federal custody, he was held over at FCI - Milan in Michigan and FTC - Oklahoma, id., Documents 1a and 1d, until he was finally committed to a permanent federal facility (FMC Devens) on June 4, 2003.  Id., Document 1d.

[5] Despite his contention otherwise, Petitioner did receive credit of 58 days for the two months jail time in May, 2002 to July, 2002.

since [his] federal sentence commenced to run on January 3, 2003." Id. In a response dated November 19, 2003, the Assistant Inmate Systems Manager explained that the time period from January 2003 through April 2003 was credited to Petitioner's *state* sentence. Id. Thus, Petitioner was not eligible to receive credit for that time on his *federal* sentence. Id.

On or about December 9, 2002, Petitioner submitted a Request for Administrative Remedy stating that he is "due credit for custody toward [his current federal] gun charge from 5/2/02 - 7/1/02; 11/8/02 - 1/3/03; and 1/3/03 - 4/6/03." Id., Document 1h. Petitioner contended that his "federal sentence came first and no other sentence was in existence at the time it was given to [him]." Id. Thus, his state sentence "should have absolutely no effect to [his] federal sentence which was already running when [he] received that state sentence on 1/23/03."[6] Id.

In a response dated February 9, 2004, the Warden explained to Petitioner that he received 58 days jail credit for the time period from May 7, 2002 through July 3, 2002, as those days were not credited to his Kent County state sentence. Id., Document 1h. The Warden further noted "at the time of sentencing, [Petitioner] was in the primary jurisdiction of Kent County, Michigan," and his time in custody "beginning November 8, 2002 to April 6, 2003, while 'on loan' under the federal writ, was credited toward [his] Kent County, Michigan sentence." Id. Pursuant to 18 U.S.C. § 3585(b), the response explained that this time in custody could not be credited to both the federal and state sentences, and thus, the "Federal judgment shall run consecutive to [the] state sentence beginning on April 6, 2003." Id. Petitioner was advised that if he was unsatisfied

---

[6] It is unclear how Petitioner obtains the date of January 23, 2003. However, this may be a typo. Referring to Document 1h, it appears Petitioner entered a guilty plea with the State on January 28, 2003 (although this cannot be verified via any records maintained by the BOP) and was subsequently sentenced on April 6, 2003.

5

with that decision, he could appeal to the Regional Director, providing his "appeal *must* be received in the Northeast Regional Office within 20 days of the date of this response." Id. See also 28 C.F.R. § 542.15(a).

Petitioner appealed the Warden's decision in a Regional Administrative Appeal to the Northeast Regional Director of the Federal Bureau of Prisons. Id., Document 1i. Petitioner's appeal was received in the Northeast Regional Office for the Federal Bureau of Prisons on March 8, 2004. Id. It was rejected and returned to Petitioner as untimely since, as he was informed previously by the Warden, Regional Appeals must be received within 20 days of the Warden's response. Id. See also 28 C.F.R. § 542.15. No further appeal to the General Counsel's office was taken.

Instead, on or about March 11, 2004, Petitioner submitted a Request for Informal Resolution regarding the issue of credit for time spent in State custody. Id., Document 1j. In the Request, Petitioner reiterated his contention that he was "sentenced first in federal court" and "there was no state sentence in existence at the time [he] was sentenced." Id. As relief, Petitioner again asked for "jail time credits from November 8, 2002 up to April 6, 2003." Id. In a response dated March 22, 2004, Petitioner was advised by staff that he already received a response from the Warden on this issue, and he could not file a Request for Administrative Remedy twice on the same issue. Id. The immediate Petition was filed and should be dismissed for the reasons stated herein.

### III. LEGAL ARGUMENT

A. **Petitioner Has Not Exhausted His Administrative Remedies.**

Petitioner's argument that he should receive credit on his instant federal sentence for time

spent in the custody of the State of Michigan should be dismissed because he failed to exhaust his available administrative remedies on these issues thereby precluding judicial review.  Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 762 (3rd Cir. 1996).

The Prison Litigation Reform Act of 1995, as amended 42 U.S.C. 1997e (a) ("PLRA"), requires a prisoner to exhaust "such administrative remedies as are available" before commencing suit over prison conditions.   Porter v. Nussle, 534 U.S. 516, 520 (2002); Booth v. Churner; 532 U.S. 731, 741 (2001).  Indeed, in general, the exhaustion doctrine "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy, and judicial economy."  Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989)(*citing* McKart v. United States, 395 U.S. 185, 194 (1969)).

Under the BOP's Administrative Remedy Program, federal inmates "may seek formal review of an issue which relates to any aspect of their confinement. . . ." 28 C.F.R. § 542.10.  See Exhibit 1, Document 1k.  Under 28 C.F.R. §§ 542.10 et seq., a three-level administrative grievance procedure is contemplated to resolve prisoner complaints, and federal inmates must adhere to this procedure before filing lawsuits related to conditions of confinement. To exhaust all process under the administrative remedy procedure for inmates, an inmate must first attempt to resolve informally the dispute with institution staff.  28 C.F.R. § 542.13.  If informal resolution efforts fail, the inmate may raise his or her complaint to the Warden of the institution in which he or she is confined within 20 calendar days of the date that the basis of the complaint occurred.[7]

---

[7]Pursuant to 28 C.F.R. § 542.14, inmates raising "sensitive" issues as well as inmates challenging disciplinary actions of a discipline hearing officer (DHO), are excused from filing administrative remedies at the institutional level.  They may access the administrative remedy

28 C.F.R. § 542.14. If the Warden denies the administrative remedy request, the inmate may file an appeal with the Regional Director within 20 calendar days of the date of the Warden's denial. 28 C.F.R. § 542.15. If the Regional Director denies the appeal, the inmate may appeal that decision to the General Counsel of the BOP within 30 calendar days from the date of the Regional Director's response. 28 C.F.R. § 542.15. The administrative remedy process is not considered to be "exhausted" until an inmate's final appeal is denied by the BOP's General Counsel. 28 C.F.R. § 542.15(a) (appeal to General Counsel is final administrative appeal); United States v. Chavez-Gavina, 2002 WL 389274 (E.D. Pa. 2002) (only after appealing through General Counsel's Office has a prisoner exhausted his administrative remedies under BOP Administrative Remedy process).

A review of available records indicates that Petitioner has not exhausted his administrative remedies on the subject matter is at issue in this Petition. Id., ¶ 4, and Document 1i.[8] Indeed, Petitioner raised his issue at the institutional level, and was subsequently denied. Id., and Document 1h. Pursuant to 28 C.F.R. § 542.15, Petitioner was instructed to file a timely appeal within 20 days to the Regional Director if he was unsatisfied with the Warden's response. Id. Petitioner's appeal was received in the Northeast Regional Office on March 8, 2004, beyond the time allotted by the aforementioned federal regulation. Id., and Document 1i. As such, the

---

system through submission of a Regional Administrative Remedy Appeal.

[8] In the ordinary course of business, computerized indexes of all administrative requests and appeals filed by inmates are maintained in the BOP's computerized data base so rapid verification may be made as to whether an inmate has exhausted the administrative remedy process on a particular issue. Also, hard copies of all administrative remedies that are filed are maintained so a review of the issues raised in each administrative remedy could be made. See Exhibit 1, p.3.

Northeast Regional Office rejected Petitioner's appeal as untimely, and instructed that he would need to provide written verification from staff demonstrating a valid reason for the delay. Id.[9]

On this backdrop, there is no record indicating that Petitioner attempted to resubmit his Appeal by providing written verification from staff on his delay. See Exhibit 1, ¶ 4. Nor has Petitioner ever appealed to the BOP's General Counsel the Northeast Regional Office's decision denying his appeal as untimely. Instead, Petitioner attempted to resurrect the administrative remedy process by re-filing an appeal on the same issue at the institutional level, which in the end was denied as duplicative of a prior request. See Exhibit 1, Document 1j.

In short, the Northeast Regional Office and the Office of General Counsel have not had the opportunity to address the issues raised in the Petition. Even assuming Petitioner did in fact mail his appeal as he claimed on February 15, 2004, the Northeast Regional Office did not receive it until well beyond the 20-day deadline. Id., Document 1i. Nonetheless, Petitioner had the opportunity to re-submit his appeal with written verification from staff explaining the delay. There is, however, no record that Petitioner took advantage of this opportunity. Id.[10] Because the Northeast Regional Office and the Office of General Counsel have not addressed Petitioner's

---

[9] The twenty (20) day deadline for submission of Appeals is set forth in § 542.15(a). As explained in BOP's Program Statement 1330.13, Administrative Remedy Program, §9(a), this "deadlin[e] ha[s] been made deliberately long to allow sufficient mail time." Id., Document 1k, Program Statement 1330.13, Administrative Remedy Program. However, the Program Statement does provide that "[w]hen an inmate demonstrates a valid reason for delay, [this] time limit may be extended." Id. When seeking an extension, "[o]rdinarily, the inmate must submit written verification from institution staff for any reason for delay that cannot be verified through SENTRY, the BOP's computerized database." Id.

[10] Similarly, there is no record of Petitioner appealing to the General Counsel's office the decision by the Northeast Regional office denying his appeal of the Warden's decision as untimely.

issue, he has not exhausted his administrative remedies as to the subject of this Petition which is fatal.

The failure to exhaust administrative remedies is an appropriate basis for dismissal of a petitioner for writ of habeas corpus.  See, e.g., Gonzalez v. Perrill, 919 F.2nd 1, 2 (2nd Cir. 1990); United States v. Brann, 990 F.2d 98, 104 (3rd Cir. 1993); Lyons v. U.S. Marshals, 840 F.2d 202, 204 (3rd Cir. 1988).  The policy reasons underlying the exhaustion doctrine in habeas cases are succinctly described in Arias v. United States Parole Commission, 648 F.2d. 196 (3rd Cir. 1981):

> We have adhered to the exhaustion doctrine for several reasons:
> (1) judicial review may be facilitated by allowing the appropriate agency to develop a factual record and apply its expertise, (2) judicial time may be conserved because the agency might grant the relief sought, and (3) administrative autonomy requires that an agency be given an opportunity to correct its own errors.
> United States ex rel. Marrero v. Warden, Lewisberg Penitentiary, 483 F.2d 656, 659 (3rd Cir. 1973) rev'd on other grounds, 417 U.S. 653, 94 S. Ct. 2532, 41 L.Ed. 2d 383 (1974).

Id. at 199.

Here, Petitioner has not successfully filed administrative remedy appeals with either the Northeast Regional Office or the Office of General Counsel.  Id., Document 1i.  Petitioner's attempt to circumvent the administrative review process by bringing his complaint to this Court before the BOP had an adequate opportunity to address the issue should be rejected.  Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3rd Cir. 1996) (failure to file timely administrative review appeal amounts to procedural default barring judicial review of habeas petition absent showing of cause and prejudice); Sayyah v. Farquharson, 382 F. 3d 20, 26 (1st Cir. 2004) (in the immigration context, failure to exhaust administrative remedies is bar to habeas review),

B. **Petitioner is Not Entitled to the Relief He Seeks Regarding Credit for Time Spent in State Custody, Because the BOP Has Properly Computed His Sentence.**

Even assuming, arguendo, that Petitioner has exhausted his administrative remedies, the Petitioner fails to state a valid claim for relief. Petitioner claims that he is entitled to receive credit against his federal sentence for time that he served in custody with the State of Michigan. Specifically, Petitioner contends that his federal sentence was imposed prior to his state sentence, and he therefore should receive credit for the time period from November 8, 2002 (date of state arrest) through April 5, 2003 (one day prior to date of release from state custody). See Petition, pp.5-6. This claim lacks merit as it misconstrues the statute governing computation of prior custody credit.

The federal statute governing sentence computations for all offenses committed after November 1, 1987, can be found at 18 U.S.C. § 3585 which provides:

> (a) **Commencement of sentence**.-A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at the official detention facility at which the sentence is to be served.
>
> (b) **Credit for prior custody**.-A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-
> (1) as a result of the offense for which the sentence was imposed; or
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another sentence*.

18 U.S.C. § 3585 (emphasis added).

Under 18 U.S.C. § 3585(a), a federal sentence commences when a defendant is received by the Attorney General of the United States for service of his/her federal sentence. Pinaud v. James, 851 F.2d 27, 31 (2nd Cir. 1988); Salley v. United States, 786 F.2d 546, 549 (2nd Cir.

1986); Chambers v. Holland, 100 F.3d 946 (3d Cir. 1996) (table).[11]

Here, Petitioner's sentence was appropriately computed to begin on April 6, 2003. Petitioner was in the primary custody of Kent County, Michigan when he was borrowed on a federal writ, and sentenced on January 3, 2003. Id., Exhibit 1, Document 1d. He was immediately returned to state custody on that date for purposes of his detention for state offense of Home Invasion. Id. However, Petitioner later received from the State of Michigan a retroactive state sentence for that offense, which meant that while he was in state custody, he was serving an active sentence for the State of Michigan from November 8, 2002 through April 6, 2003. Id., Document 1f. According to 18 U.S.C. § 3584(a), "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. §3584(a). Petitioner's federal Judgment and Commitment Order issued by the sentencing federal Court was silent on that issue relative to his impending state sentence; pursuant to statute directive, his federal sentence was determined to run consecutive to his state sentence. Id., Document 1b. See also Document 1c. Thus, Petitioner's federal sentence commenced on April 6, 2003, the date he was released from state custody for time served on his state sentence imposed by the State of Michigan and was received by the federal government to begin his federal sentence. Id., Document 1c.

Needless to say, the BOP appropriately determined that the federal sentence at issue

---

[11] When a federal sentence is imposed upon a defendant in state custody, the federal sentence may commence when the Attorney General agrees to designate the state facility for service of the federal sentence. See Barden v. Keohane, 921 F.2d 476, 479 (3rd Cir.1990); United States v. Pungitore, 910 F.2d 1084, 1118-1119 (3rd Cir. 1990). The designation authority of the Attorney General has been delegated to the Federal BOP. 28 C.F.R. § 0.96(c). Likewise, 18 U.S.C. § 3621 explicitly vests the designation authority in the BOP.

commenced on April 6, 2003. Petitioner's request for credit for time served in state primary custody prior to the commencement of his federal sentence is treated as a request for prior custody credit under 18 U.S.C. § 3585(b). The language of 18 U.S.C. § 3585(b) specifically limits federal prior custody credit to time served in official detention, either (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed. In both instances, however, § 3585(b) limits the award of prior custody to such time *that has not been credited against any other sentence.* 18 U.S.C. § 3585(b) (emphasis added). The intent of the last clause of 18 U.S.C. § 3585(b) is to prohibit double sentencing credit situations. See United States v. Wilson, 503 U.S. 329, 337 (1992) (Congress made clear under § 3585(b) that a defendant could only receive credit for time that had not been credited against another sentence). As articulated above, Petitioner's federal sentence commenced on April 6, 2003, and records indicate that, prior to that time, he was in state custody serving a sentence imposed by the State of Michigan from November 8, 2002 through April 6, 2003, the very time frame for which he seeks credit in this Petition. Id., Exhibit 1, Document 1c. See also Document 1f. In short, Petitioner's request for credit on his federal sentence for time served on a state sentence flies in the face of § 3585(b)'s explicit terms.

In closing, despite Petitioner's assertion otherwise, he already has received 58 days prior custody credit for the time period from May 7, 2002 through July 3, 2002, as this time was spent in official detention, but was not credited to the service of any other sentence. Id., Document 1c; see also Document 1d. On the other hand, the time period Petitioner spent in state custody from November 8, 2002, through April 6, 2003, was credited toward his state sentence imposed by the

State of Michigan. Id., Document 1f. Therefore, his request for credit on his current federal sentence for this time period is directly contradicted by 18 U.S.C. § 3585(b), which clearly prohibits the award of prior custody credit for time already credited to another sentence. Simply put, Petitioner is not entitled to any additional credit on his current federal sentence for time spent in custody of the State of Michigan.

## IV.  CONCLUSION

For the reasons discussed above, the Petition should be dismissed.

        Respectfully submitted,

        MICHAEL J. SULLIVAN
        United States Attorney

        /s/ Michael Sady
By:  Michael Sady
        Assistant U.S. Attorney
        John Joseph Moakley U.S. Courthouse
        Suite 9200
        Boston, MA 02210
        (617) 748-3100

Dated: December 6, 2004

## CERTIFICATE OF SERVICE

I certify that on December 6, 2004, I caused a copy of the foregoing Memorandum of Law in Support of Respondent's Motion to Dismiss to be served by first class mail, postage pre-paid to Petitioner at FMC Devens, P. O. Box 879, Ayer, MA  01432.

        /s/ Michael Sady
        Michael Sady
        Assistant United States Attorney

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1

Because Petitioner is a prisoner currently incarcerated in a correctional facility, counsel for the United States respectfully requests leave to file this Motion without a 7.1 conference.

        /s/ Michael Sady
        Michael Sady
        Assistant U.S. Attorney