**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
                                    )
JASON POTTER,                       )
            Petitioner,             )
                                    )
vs.                                 )    CIVIL ACTION
                                    )
                                    )    NO. 04-40052-FDS
DAVID L. WINN, Warden,              )
            Respondent.             )
                                    )
```

**REPORT AND RECOMMENDATION**
**June 15, 2005**

**SWARTWOOD, C.M.J.**

Nature of the Proceeding

By Order of Reference dated April 7, 2005, Respondent's Motion to Dismiss (Docket No. 6) has been referred to me for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

Nature of the Case

Jason Potter ("Mr. Potter" or "Petitioner") has filed a petition under 28 U.S.C. §2241 for a Writ of Habeas Corpus ("Petition"), alleging that he was wrongfully deprived of pre and post-conviction jail time credits on his federal sentence for time he spent in state prison on an unrelated state charge.

Facts[1]

Relevant Periods of Incarceration

1.    On May 2, 2002, Petitioner was arrested by the State of Michigan for illegal possession of a sawed-off shotgun, carrying a concealed weapon in an automobile, improper license plate and a restricted license violation.

2.    Petitioner was detained in the Michigan Kent County Jail from May 2, 2002 (the date of his arrest) until July 3, 2002, when the State of Michigan entered a *nolle prosequi* as to the weapons offense.   Petitioner was sentenced to five days time served (from May 2-May 6, 2002) for the remaining state charges, and released from state custody.

3.    Upon Petitioner's release, he was immediately arrested by federal authorities and charged with possession of a sawed-off shotgun in violation 26 U.S.C. § 5861(d)[2]. Petitioner was released on bond by the federal court that same day.

4.    On November 8, 2002, while on release with respect to the federal charge, Mr. Potter was arrested by state authorities in Michigan and charged with home invasion.  While Mr. Potter was held

---

[1]The Respondent has included a statement of facts in his Memorandum of Law in Support of Respondent's Motion to Dismiss (Docket No. 7)("Resp.'s Mem."), which is supported by citations to official records.   Where the Respondent's statement of facts and the statement of facts contained in the Petition do not differ in any material respect, I have adopted the Respondent's statement of facts.   In those instances in which the Respondent's statement of facts differs from those contained in the Petition, I have adopted Mr. Potter's version of the facts as set forth in the Petition.

[2]This charge arose out of the same conduct for which Petitioner was arrested by the State of Michigan on May 2, 2002.

in state custody, his federal conditions of release were revoked and, on November 13, 2002, a federal detainer was filed against him.

5.    On December 31, 2002, Petitioner was temporarily borrowed from state custody on a federal writ of habeas corpus for court proceedings relating to his pending federal weapons charge.

6.    Petitioner was returned to state custody on January 3, 2003, after having pled guilty in federal court to unlawful possession of a sawed-off shotgun and having been sentenced to thirty-six months incarceration followed by a three-year term of supervised release.

7.    On January 28, 2003, Petitioner pled guilty to home invasion in Michigan state court. Petitioner's sentencing was deferred pending preparation of a pre-sentence investigation report.

8.    On April 6, 2003, Petitioner was sentenced to time served on the state home invasion charge, retroactive to the date of his arrest on November 8, 2002.

9.    Petitioner was immediately released from state custody and, as of April 6, 2003, began serving his sentence on the federal weapons conviction.

Facts Relevant to Exhaustion of Administrative Remedies

10. On or about November 17, 2003, Petitioner filed an Inmate Request to Staff seeking jail time credits on his federal sentence for time spent in state custody.

11. On November 19, 2003, the Assistant Inmate Systems Manager informed Petitioner that he was not entitled to the requested jail time credits because (1) he had received five days jail credit from the state for his sentence of time served for the convictions arising out of his May 2, 2002 arrest; and (2) he would not be receiving credit from January 2003 to April 2003 because (a) he was in federal custody during that period only as a result of a writ and the time was properly credited toward his state sentence, and (b) since his federal sentence was consecutive to his state sentence, he was not eligible to have that time period credited toward his federal sentence.

12. On or about December 9, 2003[3], Petitioner, who was being housed at the Federal Medical Center in Ayer, Massachusetts ("Devens"), filed a formal request for Administrative Remedy with Respondent, asserting that he was due credit toward his federal sentence: from May 2, 2002 through July 1, 2002 (the time during which he was detained pending state trial on the charge which was ultimately dismissed and formed the basis for the federal weapons

_____

[3]Respondent's memorandum indicate that Petitioner filed his formal request for administrative relief on December 9, 2002. The actual date was December 9, 2003. See Resp's Mem., Ex 1 (Declaration of Stephanie Scannel), at Ex.1.

charge to which he pled guilty); November 8, 2002 through January 3, 2003 (the period from the date he was arrested by the state and charged with home invasion, which resulted in the federal court revoking his release, through the date he was sentenced by the federal court); and January 3, 2003 through April 6, 2003 (the period during which he was incarcerated in state court pending sentencing on the home invasion charge).

13.  On February 9, 2004, Respondent notified Petitioner that he was entitled to jail credit of 58 days for the time he had spent in state custody between May 7, 2002 (the date he completed his five-day sentence for the motor vehicle convictions arising out of his May 2, 2002 arrest) through July 3, 2002 (when he was released from state custody and arrested on a federal weapons charge), because that time had not been credited to the service of any state or federal sentence. Additionally, Respondent reiterated that Petitioner was not entitled to jail credit from November 8, 2002 to April 6, 2003 because his federal sentence, imposed on January 3, 2003, is deemed to run consecutive to his state sentence, and the period from November 8, 2002 to April 6, 2003 had properly been credited toward his state sentence.

14.  Petitioner was advised that if he was dissatisfied with the Respondent's decision, he could file an appeal with the Bureau of Prisons ("BOP") Regional Director, but that the appeal must be

received in the Northeast Regional Office within 20 days of Respondent's February 9, 2004 decision.

15.  On February 15, 2004, Petitioner mailed, through the Devens' regular mail system, a completed, signed form of appeal to the BOP Regional Director at the address specified in Respondent's February 9, 2004 decision. See Petition, at Ex. 8.  However, Petitioner's appeal was not received in the Northeast Regional Office until March 8, 2004.

16.  Petitioner's appeal was rejected as untimely. Petitioner was informed that his appeal had been due within 20 days of Respondent's February 9, 2004 decision, and that he would have to provide verification from the facility staff that he had mailed the appeal in a timely manner. Petition, at Ex. 9.

17.  Because Petitioner had used the regular mail system rather than handing it to a member of the institution staff (which at the time was the procedure for sending legal mail, see Petition, at p. 4), he was unable to obtain written verification from Devens' staff that he had mailed the appeal on February 15, 2004. See Petition, at p. 4.

18.  Petitioner then attempted to obtain the form to file an appeal with the General Counsel, the final step in the administrative appeal process. Id.  That request was denied, because the BOP Regional Director had dismissed Petitioner's

intermediate appeal as untimely, and had not issued a response to his appeal. Id.

19. Petitioner submitted a second request for informal resolution regarding credit on his federal sentence for time spent in state custody. That request was rejected because Petitioner could not file a Request for Administrative Remedy twice on the same issue.

Discussion

Respondent asserts that Petitioner's claim should be dismissed for failure to exhaust his administrative remedies. In the alternative, Respondent asserts the Petition should be dismissed for failure to state a valid claim for relief.

Mr. Potter has not filed a response to the memorandum of law filed by Respondent. However, in his Petition, Mr. Potter indicates that he made every attempt to exhaust his administrative remedies by timely mailing his Request For Administrative Remedy using the Devens' regular mail procedures. Mr. Potter further indicates that when that request was not received in the BOP Regional Director's Office in a timely manner, he was prevented from seeking further review of the denial of his claim. Mr. Potter's Petition (which includes as attachments the written statements filed by him in connection with the administrative review process) also reiterates his arguments as to why he asserts that he is entitled to receive credit on his federal sentence for

the time he spent in state custody from November 2, 2002 through April 6, 2003.

    1. <u>Failure to Exhaust Administrative Remedies</u>

A Petitioner seeking to challenge the execution of his sentence, as opposed to the validity of his conviction, may file a federal habeas petition pursuant to 28 U.S.C. §2241. Contrary to the Respondent's argument, the Prison Litigation Reform Act of 1995, as amended 42 U.S.C. §1997(e)("PLRA"), does not apply to Section 2241 cases. <u>See</u> <u>Skinner v. Wiley</u>, 355 F.3d 1293 (11th Cir. 2004)(PLRA does not apply to Section 2241 proceedings); <u>Carmona v. United States Bureau of Prisons</u>, 243 F.3d 629 (2$^{d}$ Cir. 2001)(same); <u>Armstrong v. United States</u>, 2005 WL 1216633 *2, n.4 (M.D.Pa. May 10, 2005)(same). Nonetheless, all of the Circuit Courts that have addressed the issue have held that a prisoner seeking Section 2241 habeas relief must exhaust the Bureau Of Prisons ("BOP") multi-step administrative remedies procedures, <u>see</u> 28 C.F.R. §§542.10—542.19[4], prior to filing his/her petition in federal court. <u>See</u> <u>Skinner</u>, 355 F.3d at 1295; <u>see</u> <u>also</u> <u>Jaramillo v. Stine</u>, 2005 WL 1331043 (D.Minn. June 3, 2005); <u>Armstrong</u>, 2005 WL 1216633 at *2 n.4. However, a petitioner's failure to exhaust administrative remedies does not deprive this Court of jurisdiction over his/her petition and

---

[4]The inmate must first attempt to resolve the issue informally with institution staff. If the dispute cannot be resolved informally, the inmate must file a formal administrative remedy request with the warden of the facility where s/he is incarcerated. If the warden does not resolve the issue to the inmate's satisfaction, the inmate must then appeal to the appropriate regional Director and thereafter, appeal lies to the General Counsel.

therefore, there are situations in which this Court will address an unexhausted petition filed pursuant to Section 2241.

After denial of Mr. Potter's informal grievance concerning his sentence, he filed a formal request for administrative remedy and in response, was credited with 58 days for the time he had spent in state custody between May 7, 2002 and his July 3, 2002 arrest on federal weapons charges (because that time had not been credited to any other state or federal sentence).  However, Mr. Potter's request that his federal sentence be credited for the time he was in state custody on the home invasion charge (November 8, 2002 to April 6, 2003), was denied on February 9, 2004, because his federal sentence is deemed to run consecutive to his state sentence and those days had been credited to his state sentence (for which he received time-served).

In the February 9, 2004 decision on Mr. Potter's formal administrative request, Mr. Potter was informed that any appeal of that decision must be filed with the BOP Regional Director within twenty calendar days.  Mr. Potter placed his completed appeal form in the prison mail system on February 15, 2004.  However, because the appeal was not received in the Northeast Regional Office until March 8, 2004, it was rejected as untimely.  See 28 C.F.R. §542.15(b)(1).

Petitioner was unable to obtain verification from the Devens' staff that he had mailed the appeal form on February 15, 2004.

Furthermore, because his appeal to the BOP Regional Director had been rejected as untimely, he was not allowed to submit a final appeal to the General Counsel's Office.

Under the so-called mailbox rule, which has been adopted by the First Circuit, a prisoner's legal mail is considered filed when the prisoner hands such mail to prison officials. <u>Casanova v. Dubois</u>, 304 F.3d 75 (1st Cir. 2002)(prisoner's complaint considered timely, although docketed three months after expiration of statutory limitations period, because prisoner handed complaint to prison officials for mailing within statutory period); <u>see also Houston v. Lack</u>, 487 U.S. 266, 108 S.Ct. 2379 (1988) (mailbox rule governs determination of when prisoner's filing has been completed).

In this case, Petitioner represents that he mailed his appeal using the regular prison mail.  However, Devens' staff refused to verify that the appeal was placed in the mail in a timely manner because he did not hand the mail directly to an institution official.  Since Mr. Potter did not follow the appropriate procedure for sending legal mail which was in effect at the time, there is some question as to whether the mailbox rule should apply in this case.  Nevertheless, for purposes of this Report and Recommendation, I find that Petitioner mailed his appeal to the BOP Regional Director through regular prison mail well within the mandated appeal period, and therefore, his appeal was timely.

Since the appeal was timely filed, it should have been addressed on the merits.  Because it was not, Petitioner was precluded from exhausting his administrative remedies.[5]

This Court could dismiss the Petition to permit Mr. Potter to pursue his administrative remedies and as part of that dismissal, the Court could Order that the Northeast Regional Director consider Mr. Potter's appeal.  However, through no fault of Mr. Potter's, by the time that he pursued his administrative appeals, his Petition would, in all likelihood, be moot (because he would have already served the entirety of the disputed time period).  Under these circumstances, I recommend denying Respondent's motion to dismiss for failure to exhaust his administrative remedies.  However, for the reasons set forth below, I find that Petitioner's claim should be dismissed on its merits.

---

[5]Respondent has somewhat misstated the issue concerning Mr. Potter's alleged failure to exhaust his administrative remedies.  After Mr. Potter was informed that his appeal to the BOP Regional Director was being rejected as untimely, he attempted to initiate a new grievance concerning the issue of whether he was entitled to credit on his federal sentence for the period from November 8, 2002 through April 6, 2003.  However, that grievance was rejected on the grounds that he could not file a Request for Administrative Remedy twice on the same issue.  In other words, Mr. Potter's request was deemed procedurally defaulted, which is an independent and adequate state ground for dismissing a petition.  If this Court were to find that Mr. Potter had procedurally defaulted his claim, the remedy would not be to dismiss Mr. Potter's Petition to permit him to reinitiate his administrative remedies (which would clearly be futile).  Rather, Mr. Potter would have to establish cause and prejudice for such default. See Carmona v. United States Bureau Of Prisons, 243 F.3d 629 (2d Cir. 2001)(all circuits which have addressed issue have held that petitioner who has procedurally defaulted may not seek federal habeas review under Section 2241 unless s/he makes an initial showing of cause and prejudice).

11

2. <u>Failure to State A Claim</u>

At the time that Mr. Potter was sentenced, the statutory provisions governing the calculation of an inmate's term of imprisonment provided as follows:

**(a) Commencement of sentence.** —A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

**(b) Credit for prior custody.** —A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

**(1)** as a result of the offense for which the sentence was imposed; or

**(2)** as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

18 U.S.C. §3585(emphasis added). Furthermore, "[a] federal sentence does not commence until the Attorney General receives the defendant into his custody for service of the federal sentence". See <u>Jimenez v. Warden, FDIC, Fort Devens</u>, 147 F.Supp.2d 24, 27 (D.Mass. 2001). On April 6, 2003, Mr. Potter was sentenced by the State of Michigan to time served from November 2, 2002, on the home invasion charge and released into federal custody. It is undisputed that Petitioner began serving his federal sentence on that date (April 6, 2003).

12

During the disputed time period (November 8, 2002 through April 6, 2003), Mr. Potter was in state custody awaiting trial on the home invasion charge, pled guilty to that charge and completed his sentence. The fact that Mr. Potter pled guilty to the federal weapons charges and was sentenced by the court on January 3, 2003, does not, in and of itself, entitle him to credit on his federal sentence for time served during this period. "When a federal court sentences a defendant who is in state custody at the time of sentencing, `the federal sentence may commence if and when the Attorney General or the BOP agrees to designate the state facility for service of the federal sentence'". Id., at p. 28. There is nothing in the record to suggest that the BOP made such a designation in this case.

It is true that Mr. Potter was transferred into federal custody for a brief time during this period (a few days), pursuant to a federal writ of habeas corpus, to attend proceedings related to the federal weapons charges which were then pending against him. However, those days were credited toward Mr. Potter's state sentence.[6]  Since Mr. Potter received credit towards his state sentence, those days are not counted toward his federal sentence.

---

[6]Mr. Potter was charged by Michigan authorities after federal charges were brought against him, but while he was on release in federal court. Since Mr. Potter had been released pending trial on the federal charges, the federal court had relinquished primary jurisdiction over him. When he was arrested by Michigan authorities on the home invasion charge, he was held in custody pending resolution of that charge and therefore, Michigan retained primary jurisdiction over him until he completed his state sentence. See Jimenez, 147 Fed.Supp.2d at 28.

13

<u>See</u> Jimenez, 147 F.Supp.2d  28 (federal sentence does not begin to run when federal defendant is delivered from state custody to attend proceedings related to federal prosecution under federal writ of habeas corpus ad prosequendum because state custody is not relinquished)(internal citations omitted).

As a matter of law, Petitioner is not entitled to credit towards his federal sentence for the period November 8, 2002 through April 6, 2003, the period during which he was serving a state sentence imposed with respect to his conviction for home invasion.  Therefore, Respondent's Motion to Dismiss for failure to state a claim for which relief can be granted should be allowed.

<u>Conclusion</u>

I recommend:

1.  that Respondent's Motion to Dismiss (Docket No. 6) be <u>allowed</u>.

<u>Notice to Parties</u>

The parties are advised that under the provisions of Rule 3(b) of the Rules for the United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court WITHIN 10 DAYS of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of those proposed findings, recommendations, or report to which objection is made and the basis of such objection.  The parties are further

advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court's order entered pursuant to this Report and Recommendation. See United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F. 2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985).


/s/ Charles B. Swartwood
CHARLES B. SWARTWOOD, III
CHIEF MAGISTRATE JUDGE


15